# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**CENTER FOR PUBLIC INTEGRITY**,

    Plaintiff,

    v.

**FEDERAL ELECTION COMMISSION**,

    Defendant.

Case No. 17-cv-1162 (CRC)

## MEMORANDUM OPINION

Following the 2017 presidential inauguration, a wave of anonymous accounts claiming to have ties to federal government agencies cropped up on Twitter. The account "handles" were styled as "@alt" followed by the particular agency's name, such as @altFEC or @ALT_USCIS. Run by those professing to be current or former agency employees, these Twitter accounts publicly criticized the associated agencies and the current Administration. This naturally raised legal questions. After receiving a summons from U.S. Customs and Border Protection for information related to the @ALT_USCIS account, Twitter filed suit on First Amendment grounds, voluntarily dismissing only after the government withdrew the summons. See Twitter, Inc. v. U.S. Dep't of Homeland Sec., No. 3:17-cv-01916-JCS (C.D. Cal. 2017). And, not surprisingly, journalists wanted to know what other agencies were planning to do about the accounts.

One group of journalists, the Center for Public Integrity, filed two requests under the Freedom of Information Act ("FOIA") with the Federal Election Commission ("FEC") seeking records regarding the "@altFEC" Twitter account and communications from the "EOP.gov"

domain.[1]  The FEC produced some responsive documents and redacted or withheld others.  The parties have filed cross-motions for summary judgment regarding these redactions and withholdings.  For the reasons below, the Court will grant the FEC's motion for summary judgment and deny the Center for Public Integrity's cross-motion.

## I. Background

This case involves two FOIA requests.  By email on February 1, 2017, plaintiff first requested from the FEC:

> Any emails, memoranda or other correspondence or communication that discuss, mention, reference or otherwise pertain to the Twitter account "altFEC." This includes direct mention of the account "@altFEC", as well as other obvious references to the @altFEC account, which should include, but not be limited to: "alt FEC Twitter," "alt FEC account" and "fake @FEC account."

Decl. of Katie A. Higginbothom Supp. Def.'s Mot. Summ. J. ("Higginbothom Decl.") Ex. A.  The FEC's searches generated twenty-one pages of communications.  Higginbothom Decl. ¶ 5.  The agency released seven pages of these responsive records and withheld fourteen pursuant to FOIA Exemption 5.  Id. ¶¶ 6–7.  The agency affirmed the withholding in an administrative appeal.  Id. ¶ 9.

By email on February 6, 2018, plaintiff submitted a second records request to the FEC, this time for "[a] copy of all emails from the domain 'EOP.gov' to senior managers and commissioners encompassed within the required agency system for retaining emails of senior officials."  Higginbothom Decl. Ex. G.  The FEC found fourteen pages of responsive documents, all of which originated from the Office of Management and Budget ("OMB").  Higginbothom Decl. ¶ 11.  The agency referred those documents to OMB for disposition and OMB suggested

---

[1] EOP.gov refers to the Executive Office of the President.

redactions pursuant to FOIA Exemptions 5 and 6. Id. ¶¶ 12, 14. The FEC adopted those suggestions and released all fourteen pages with redactions.[2] Id. ¶ 14.

The parties have both moved for summary judgment, and those motions are ripe for review.

## II. Legal Standard

The agency bears the burden of proving that any redactions or withheld records fall within the scope of an exemption to FOIA. AquAlliance v. U.S. Bureau of Reclamation, 856 F.3d 101, 102–03 (D.C. Cir. 2017). Exemption 5 of FOIA, which the FEC has invoked, permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As relevant here, this exemption includes documents protected by the deliberative process privilege. Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015). To qualify for this privilege, the document must be both "predecisional" and "deliberative." Id. (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). A predecisional communication is one that "precedes, in a temporal sense, the 'decision' to which it relates." Id. (citation omitted). A deliberative communication is one that is "a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." Id. (citation omitted).

FOIA disputes are generally resolved on cross-motions for summary judgment. Lantz v. U.S. Dep't of Commerce, 316 F. Supp. 3d 523, 527 (D.D.C. 2018). Summary judgment is

---

[2] The Center for Public Integrity does not challenge the redactions made pursuant to Exemption 6, which protects personal information in the interest of privacy. See Pl.'s Cross-Mot. Summ. J. ("Pl.'s MSJ") at 3 n.1; see also 5 U.S.C. § 552(b)(6).

appropriate where the pleadings and records show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted in the FOIA context "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006).

**III. Analysis**

    A. @altFEC request

The Center for Public Integrity objects to the FEC's reliance on FOIA Exemption 5 to withhold fourteen documents responsive to its @altFEC request. The Center argues that the agency's declaration justifying application of the deliberative process privilege is "conclusory" and that, even if the privilege were to apply, the agency would still have to produce redacted versions of the documents revealing non-exempt factual information. Pl.'s MSJ at 4.

    *1. Deliberative process privilege*

The FEC has met its burden of demonstrating the applicability of Exemption 5 and the deliberative process privilege. The agency's declaration explains that the withheld emails "consisted of communications among attorneys at different levels in the FEC's Office of General Counsel working to identify and analyze potential legal issues that the 'altFEC' Twitter account might raise.'" Higginbothom Decl. ¶ 6. In other words, agency lawyers were engaged in a back-and-forth discussion on a specific legal question. "There can be no doubt that such legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5." Brinton v. Dep't of State, 636 F.2d 600, 604 (D.C. Cir. 1980).

4

## 2. *Segregable information*

Perhaps because the documents contain exactly the kind of information the deliberative process privilege was designed to protect, the Center for Public Integrity focuses more of its attention on the agency's conclusion that the emails contain no reasonably segregable non-exempt information. But the Center's arguments here, too, are unavailing.

Factual information is generally not covered by the deliberative privilege exemption. However, such information "may also be withheld as deliberative material when it is so thoroughly integrated with deliberative material that its disclosure would expose or cause harm to the agency's deliberations." Elec. Frontier Found. v. DOJ, 739 F.3d 1, 13 (D.C. Cir. 2014). According to the agency's declaration, that is the case here, see Higginbothom Decl. ¶ 6, and the Center for Public Integrity has produced no evidence of agency bad faith to suggest otherwise. See Consumer Fed'n of Am., 455 F.3d at 287; see also Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.").

Moreover, to the extent the Center counters that there must be *some* non-exempt information that can be released like the names of senders and recipients, Pl.'s MSJ at 5, the FEC has disclosed that very information in the Vaughn index attached to its reply.[3] To provide further context to the communications, the index identifies the senders, recipients, and dates of each withheld email chain. Def.'s Reply Ex. A; see also Def.'s Reply at 3. Requiring the agency to release additional factual information beyond that in the Vaughn index would risk revealing

---

[3] A "Vaughn index" is a document that summarizes the government's withholdings of documents responsive to a FOIA request. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

the underlying deliberations themselves. Thus, the Center for Public Integrity's challenge to the FEC's response on this basis fails as well.

    B. EOP.gov request

The Center for Public Integrity also objects to the FEC's reliance on FOIA Exemption 5 to redact responsive documents related to its EOP.gov request. Because the Center does not challenge the redactions made pursuant to Exemption 6, that leaves just two pages of responsive documents at issue. The Court addresses those pages in turn.

    *1. The agenda*

The first page, Document No. 7 in the Vaughn index, is an email which includes an "[a]genda for an OMB/Agency Performance team call." Def.'s Reply Ex. A at 3. According to the agency, the agenda was redacted because "disclosure would reveal preliminary plans regarding subjects to be addressed in a future meeting." Id. The email does not provide more detail of those "subjects" and instead describes the agenda as covering "several areas." Def.'s Reply Ex. B.

A meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting. Other courts in this district have likewise concluded that an agency properly redacted the contents of a typed meeting agenda pursuant to the deliberative process privilege of FOIA Exemption 5. See, e.g., Nat'l Right to Work Legal Defense & Educ. Found., Inc. v. U.S. Dep't of Labor, 828 F. Supp. 2d 183, 190–91 (D.D.C. 2011). Thus, the FEC has met its burden of demonstrating that the redacted agenda is covered by the deliberative process privilege.

### 2. *The CISO email*

The second page, Document No. 8 in the Vaughn index, is an email "to Small Agency CISOs"—*i.e.*, chief information security officers—which was partially redacted because the email contains "suggestions regarding assessments of agency management of information resources." Def.'s Reply Ex. A at 3. In other words, relevant agency experts engaged in back-and-forth consultation about possibilities for evaluating the manner by which agencies handle data and other forms of information. As such, this email reflects "recommendations[] and deliberations comprising part of the process by which government decisions and policies"—such as how to evaluate information resource management—"are formulated." See Pub. Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 875 (D.C. Cir. 2010) (citation omitted). Thus, the FEC has met its burden of demonstrating that the redacted discussion is covered by the deliberative process privilege.

### C. *In camera review*

As an alternative to ordering disclosure, the Center for Public Integrity urges the Court to conduct an *in camera* review of the redacted or withheld documents because the FEC's "justifications for not releasing segregable, non-exempt information are vague and conclusory." Pl.'s Mot. *In Camera* Judicial Rev. at 3.

This Court has "'broad discretion' to decide whether *in camera* review is necessary to determine whether the government has met its burden" regarding the production of reasonably segregable information and the application of the deliberative process privilege. Loving v. DOD, 550 F.3d 32, 41 (D.C. Cir. 2008) (quoting Armstrong v. Exec. Office of the President, 97 F.3d 575, 577–778 (D.C. Cir. 1996)). "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not

contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." ACLU v. DOD, 628 F.3d 612, 626 (D.C. Cir. 2011) (quoting Larson v. Dep't of State, 565 F.3d 857, 870 (D.C. Cir. 2009)).

*In camera* review is not necessary here. The agency's declaration and Vaughn index provide sufficiently specific information for the Court to determine that the documents in question were properly withheld or redacted pursuant to the deliberative process privilege, and there is no evidence to the contrary.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment and Motion for *In Camera* Review. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 18, 2018